AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

### for the

### District of New Mexico ▼

**FILED**

United States District Court
Albuquerque, New Mexico

Mitchell R. Elfers
Clerk of Court

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Body of Vincent NEZ
(year of birth 1988)

)
)
)
)
)
)

Case No.  **23 MR 2315**

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A

located in the _____ District of \_\_\_\_\_**New Mexico**\_\_\_\_\_ , there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1153 | Offenses Committed in Indian Country |
| 18 U.S.C. § 1111(a) | 2nd-Degree Murder |
| 18 U.S.C. § 2 | Aiding and Abetting |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Molly Schommer, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____**telephone**_____  *(specify reliable electronic means)*

Date: \_\_\_\_\_**12/15/2023**\_\_\_\_\_

*Judge's signature*

City and state: **Albuquerque, New Mexico**

B. Paul Briones, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

IN THE MATTER OF THE SEARCH OF:
THE BODY OF VINCENT NEZ,
YEAR OF BIRTH 1988

Case No. _____

**FILED UNDER SEAL**

**AFFIDAVIT IN SUPPORT OF**
**APPLICATION FOR A SEARCH WARRANT**

I, Molly Schommer, Special Agent of the Federal Bureau of Investigation ("FBI"), United
States Department of Justice, having been duly sworn, state:

**INTRODUCTION AND BACKGROUND**

1.      I make this affidavit in support of an application under Rule 41 of the Federal Rules
of Criminal Procedure for a warrant to search the body of Vincent NEZ, Year of Birth ("YOB")
1988, to collect Deoxyribonucleic Acid ("DNA") samples by way of buccal swabs. I believe
NEZ'S DNA may be present on a Hi-Point Caliber .380 firearm that was located inside a residence
belonging to B.W., YOB 1986, hereinafter "Witness 1", on a piece of flooring recovered from that
same residence, and on/in an empty plastic Olde English bottle that was located at the scene. Based
on my training and experience and the facts set forth in this affidavit, there is probable cause to
believe that violations of 18 U.S.C. §§ 1153, 1111(a), and 2, that being Offenses Committed within
Indian Country, Second-Degree Murder, and Aiding and Abetting, have been committed.

2.      I am a Special Agent with the FBI and have been so employed since April of 2021.
As such, I am a federal law enforcement officer within the meaning of Rule 41 of the Federal Rules
of Criminal Procedure. I am currently assigned to the Violent Crime Task Force at the FBI
Albuquerque Field Office. I primarily investigate Indian Country cases, such as homicide and
sexual assault. I have also assisted with the investigation of gang-criminal enterprises and Drug
Trafficking Organizations ("DTOs") involved in the unlawful possession of firearms, distribution

of controlled substances, racketeering activities, and conspiracies associated with these offenses. I have received on the job training from other experienced agents, detectives, and correctional officers in the investigation of criminal actors and criminal enterprises. My investigative training and experience includes, but is not limited to, the FBI Training Academy at Quantico, Virginia; interviewing subjects, targets, and witnesses; writing affidavits for, and executing search and arrest warrants; collecting evidence; conducting surveillance; and analyzing public records. Additionally, I received advanced training and instruction from the United States Indian Police Academy related to Indian Country offenses and the Department of Justice National Indian Country Training Initiative regarding investigating and prosecuting federal sexual assault cases. Before becoming an FBI agent, I was a criminal prosecutor for two years. Through my training and experience both as an FBI Special Agent and city and county prosecutor, I am familiar with techniques used by criminal actors, DTOs, gangs, and criminal enterprises.

3.      As a result of my training and experience and my knowledge of this investigation, I know that various objects, such as firearms, may be used as murder weapons and are tools of the trade and instrumentalities of criminal enterprises, particularly in instances involving homicides by gunshot. Additionally, persons who commit homicides with firearms tend to have those firearms on their person, in their residence, or left at an alternative location after the homicide is committed. I am also aware that when individuals handle firearms, their DNA is often left behind and is detectable by lab technicians.

4.      Furthermore, as a result of my training and experience and my knowledge of this investigation, I know that various objects left behind at the scene may contain individuals' DNA, which can assist in placing various individuals at the scene of the crime. Specifically, those objects

may be helpful if they contain areas that often have DNA left behind on them, such as the mouth area of a bottle.

5.      The facts in this affidavit come from my personal observations, my training and experience, information obtained from other law enforcement agencies, agents, and witnesses, and records I have reviewed. This affidavit does not set forth all of my knowledge nor summarize all of the investigative efforts in this investigation. Because this affidavit is submitted for the limited purpose of securing a search warrant, I have set forth only those facts I believe are necessary to establish probable cause to support a search warrant to collect NEZ'S DNA.

## STATEMENT OF PROBABLE CAUSE

6.      On September 22, 2022, Pueblo of Laguna Police Department ("LPD") Officers responded to Acoma-Canoncito-Laguna Hospital ("ACLH"), Acoma Pueblo, New Mexico, after A.H., YOB 1985, hereinafter "John Doe", was brought to ACLH by Witness 1. John Doe was transported from ACLH to the University of New Mexico Hospital ("UNMH"), Albuquerque, New Mexico. ACLH recovered one black Hi-Pointe Firearms magazine and two live .380 rounds of ammunition from John Doe's person. UNMH also recovered six loose live .380 rounds of ammunition from John Doe's person. Bureau of Indian Affairs ("BIA") and FBI Agents were contacted.

7.      On September 22, 2022, FBI Agents went to UNMH where John Doe was being treated in the Neurosciences Intensive Care Unit. An object, believed to be a bullet, was seen via medical scans inside the center portion of John Doe's head. John Doe also had a possible bite wound on his hand, blood under his nails, and scrapes on his arms.

8.      John Doe passed away on October 8, 2022, and underwent an autopsy on October 9, 2022. John Doe suffered a gunshot wound to the right frontoparietal region of his head. The

entrance was created by a small projectile. There was a partial exit on the left side of John Doe's head. The bullet traveled front to back, right to left, and slightly downward.[1]

9.      On September 22, 2022, an FBI Agent, BIA Agent, and LPD Officer went to Witness 1's residence and spoke with Witness 1 who indicated she knew John Doe as a friend through a cousin. Witness 1 told investigators that on the morning of September 21, 2022, she saw John Doe on the ground outside of the gate to her residence. There was lots of blood and John Doe was slumped down. Witness 1 and her boyfriend, NEZ, picked up John Doe, put John Doe in the bed of Witness 1's pickup truck, and brought John Doe back to Witness 1's residence. John Doe was very bloody and had a large gash on his head, which Witness 1 tried bandaging. John Doe was talking and alert. John Doe kept moving and was trying to get up but could not stand up. John Doe did not want to go to the hospital and did not want Witness 1 to call an ambulance. Witness 1 asked John Doe what happened, but John Doe did not know.

10.      Witness 1 did not find a firearm on John Doe's person. Witness 1 was thinking "they" may have stolen it from John Doe. Witness 1 also stated that John Doe smoked methamphetamine and that John Doe smelt like alcohol when Witness 1 found him.

11.      Witness 1 cut off the jacket that John Doe was wearing. Witness 1 provided this jacket to investigators. Witness 1 also provided John Doe's beanie hat to investigators. Witness 1 indicated she washed the hat, which was badly covered in blood. The hat was not on John Doe's head but was stuck in the hood of the jacket at the time Witness 1 found John Doe. Additionally, Witness 1 showed investigators where John Doe was placed on a blue tarp in the bed of Witness

---

[1] A previous search warrant, 22-MR-1444 issued in the United States District Court for the District of New Mexico by United States Magistrate Judge Steven C. Yarbrough on September 28, 2022, stated, with regard to information from UNMH, "John Doe was suffering from a gunshot wound that entered through the upper back center area of his head." This sentence was omitted from this warrant application as the information from OMI was deemed to be more accurate following a final autopsy report.

1's pickup truck. A dry red substance, which in my training and experience I believed to be blood, was seen in large spots in various places on the tarp.

12.     Finally, Witness 1 stated that on the morning of September 22, 2022, Witness 1's brother[2] came to Witness 1's residence to help Witness 1 get John Doe to the hospital. John Doe was then brought to ACLH.

13.     Witness 1 had a security camera system at her residence, which she reviewed and saw a little SUV or single cab pickup truck come onto her property. Witness 1 also saw lights and figures fighting. It appeared someone was by the gate. Witness 1 first saw these lights around 2:00 a.m. or 3:00 a.m. and last saw these lights around 3:55 a.m. on September 21, 2022.

14.     On September 23, 2022, FBI Agents, Regional Computer Forensics Laboratory employees, and a LPD Officer returned to Witness 1's residence to obtain a copy of the security footage. Witness 1 stated that John Doe came to her residence around 8:00 p.m. on September 20, 2022. As the footage continues into the night and through the early morning of September 21, 2022, John Doe, at least one vehicle, and at least two other individuals are seen coming to and from Witness 1's residence.

15.     Prior to agents and officers leaving Witness 1's residence, Witness 1 was asked to show agents and officers exactly where she found John Doe. There was an empty plastic bottle, which Witness 1 indicated did not belong to her, in the area. The bottle, an empty plastic Olde English bottle, was collected as evidence.

16.     On September 27, 2022, the downloaded security footage was reviewed, and the following dates and times were observed with relevant information. There were gaps in the footage as the footage was unable to be fully downloaded.

---

[2] Witness 1 provided her brother's name. However, agents have been unable to locate him.

    a.  On September 20, 2022, around 8:38 p.m. and 8:39 p.m., a vehicle was seen arriving at Witness 1's residence and John Doe was seen leaving the residence walking to the vehicle. On September 20, 2022, around 8:40 p.m., John Doe was seen walking with an unidentified other individual into Witness 1's residence.

    b.  There was a gap and then the next footage that was downloaded was from September 21, 2022. In this footage, around 12:24 a.m., John Doe was seen coming back to Witness 1's residence with what appeared to be a firearm, which could be a rifle or an airsoft gun.

    c.  There was again a gap and then the next footage that was downloaded was from September 21, 2022, around 1:06 a.m., which showed a vehicle drive up to Witness 1's residence and an individual, possibly John Doe, picking something up off the ground.

    d.  Additionally, some of the footage that was downloaded showed what appeared to be the flashlights referenced by Witness 1. However, the date and time stamp for those clips was not recorded with the download that was obtained.

17.    On September 29, 2022, FBI Agents and Task Force Officers executed a search warrant at Witness 1's residence pursuant to federal search warrant 22-MR-1444 issued in the United States District Court for the District of New Mexico by United States Magistrate Judge Steven C. Yarbrough on September 28, 2022. A Hi-Point Caliber .380 firearm was recovered under the bed in the master room of the residence. Additionally, a piece of wood flooring was recovered from the living room that tested positive for presumptive blood. Furthermore, additional security footage was recovered which was later reviewed and showed a female, believed to be Witness 1,

twice going back and forth between her residence and a parked truck on September 21, 2022, beginning at 3:41:15 and ending back in her residence at 3:44:00.

18.      Witness 1 was not present at her residence when the search warrant began. However, Witness 1 came to the residence with NEZ as the search was taking place. FBI Agents spoke with Witness 1 who indicated the .380, referring to a .380 firearm, was in a box under the bed. Witness 1 stated this gun belonged to John Doe. John Doe bought the gun two or three months prior. Witness 1 put the .380 in the box a couple of days after the incident. Witness 1 found the .380 in a drawer in John Doe's room. Witness 1 also stated that the night of the incident NEZ was asleep in the house. Around 2:00 a.m. or 3:00 a.m., John Doe was at Witness 1's residence drinking and smoking methamphetamine. Additionally, Witness 1 took photographs of the security footage of an unidentified male[3] and an unidentified female entering her residence the night of the incident, with a date and time stamp that does not include the month but shows "/20/2022 09:38:22 PM".

19.      NEZ was also interviewed by FBI Agents. NEZ indicated he was notified by his girlfriend, Witness 1, that John Doe was injured and laying on the ground at the end of the driveway, near the gate to the property. NEZ assisted Witness 1 to load John Doe into the bed of Witness 1's truck. NEZ described that John Doe was bleeding from the head. John Doe was conscious and talking but did not provide any details surrounding how he was injured. NEZ indicated he was not present when John Doe was transported from the residence to the hospital.

20.      The interviewing FBI Agent observed healing wounds on NEZ'S hands. NEZ indicated he sustained the injuries to his hands while rebuilding the porch of the residence a few days prior.

---

[3] Witness 1 showed these photographs to her friend, who said the male might be an individual from Grants. Agents have been unable to locate both Witness 1's friend and the male from Grants.

21.     On October 18, 2022, an FBI Agent and LPD Officers interviewed H.M., YOB 1984, hereinafter "Witness 2". Witness 2 and John Doe graduated from high school together. Witness 2 saw John Doe at his girlfriend, Witness 1's, trailer in Laguna, New Mexico. John Doe and Witness 1 were possibly dating or possibly swingers as Witness 1 was also dating another person. John Doe made trips to Albuquerque, New Mexico, with Witness 1. John Doe dealt methamphetamine and Witness 1 smoked a lot of methamphetamine. Witness 2 gave a .380 black pistol firearm to John Doe as a lien, which Witness 2 received methamphetamine in return for. Witness 2 gave the firearm to John Doe in Laguna, New Mexico, in August 2022.

22.     I submitted the Hi-Point Caliber .380 firearm, empty plastic Olde English bottle, and piece of flooring to the FBI Laboratory for DNA analysis. Male DNA[4] was obtained from the textured areas of the Hi-Point Caliber .380 firearm, which was interpreted as originating from two individuals. John Doe was excluded as a potential contributor to the firearm. Furthermore, male DNA[4] was obtained from the mouth area of the Olde English bottle, which was interpreted as originating from two individuals. There was limited support for inclusion of John Doe's DNA. Additionally, blood was indicated on the piece of flooring.[5] Male DNA[4] was obtained from a swabbing of a stain from the piece of flooring and was interpreted as originating from three individuals. There was very strong support for inclusion of John Doe's DNA.

**FEDERAL JURISDICTION AND INDIAN COUNTRY NEXUS**

23.     The location where John Doe was found, outside of the gate to Witness 1's residence, 173 Rainfall Road, Seama, New Mexico 87007, is within the exterior boundaries of the Pueblo of Laguna. The location is Indian Country pursuant to 18 U.S.C. § 1151.

---

[4] The presence of male DNA in a mixture may limit the ability to determine if female DNA is also present in that mixture.
[5] This conclusion is based on a positive presumptive test. This result provides an indication that blood may be present on an item, but does not constitute an identification of blood.

24.     John Doe is an enrolled member of the Navajo Nation and has ½ degree Navajo Indian blood. He is an Indian for purposes of federal law.

**CONCLUSION**

25.     Based on the information contained herein, I believe probable cause exists indicating 18 U.S.C. §§ 1153, 1111(a), and 2, that being Offenses Committed within Indian Country, Second-Degree Murder, and Aiding and Abetting were violated. As such, I am seeking authorization to collect DNA samples from NEZ to be utilized in the examination of the evidence collected in this matter, specifically to compare with the DNA found on the Hi-Point Caliber .380 firearm, the piece of flooring, and the empty plastic Olde English bottle.

26.     I will request the laboratory compare any DNA found on the Hi-Point Caliber .380 firearm, the piece of flooring, and the empty plastic Olde English bottle to the DNA of NEZ. Specifically, to determine if NEZ is included or excluded as a contributor to the male DNA on the firearm, the flooring, and the plastic bottle.

27.     Male DNA was obtained from the Hi-Point Caliber .380 firearm, which was interpreted as originating from two individuals and John Doe was excluded as a potential contributor to the firearm. There are three other known males to be in the area of John Doe's body around the time of the incident. These males include an unidentified male from the security footage, Witness 1's brother, and NEZ. Because John Doe was excluded as a potential contributor to the firearm, there is high investigative value in determining whether it is NEZ'S DNA on the firearm or not NEZ'S DNA on the firearm and, therefore, another male's DNA.

28.     Based on the information contained herein, I believe probable cause exists to search NEZ for the purpose of obtaining DNA samples by buccal swabs pursuant to Rule 41 of the Federal Rules of Criminal Procedure.

29.     This affidavit was reviewed and approved by Supervisory Assistant United States

Attorney Alexander Flores.

Respectfully Submitted,

Molly Schommer
Special Agent
Federal Bureau of Investigation

ELECTRONICALLY SUBMITTED AND TELEPHONICALLY SWORN TO BEFORE ME ON
DECEMBER 15, 2023.

HONORABLE B. PAUL BRIONES
UNITED STATES MAGISTRATE JUDGE
DISTRICT OF NEW MEXICO

## ATTACHMEHT A

### Person to Be Searched

The person to be searched is Vincent NEZ, YOB 1988, whose photograph is shown below, so long as NEZ is located within the District of New Mexico at the time of the search:



## **ATTACHMENT B**

### **Property to Be Seized**

The following material, which constitute evidence of the commission of a criminal offense, namely violations of 18 U.S.C. §§ 1153, 1111(a), and 2, that being Offenses Committed within Indian Country, Second-Degree Murder, and Aiding and Abetting:

1. DNA samples, via buccal (cheek) swabs, from Vincent NEZ.